IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS LEVU, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

AIR CANADA, INC.,

    Defendant.
_____/

Case No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, THOMAS LEVU ("Levu" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Air Canada, Inc. ("Air Canada" or "Defendant"), and alleges the following:

### INTRODUCTION

1. Air Canada is a large air carrier that conducts flights mostly in Canada and the United States and is the fifth largest airline in North America. Air Canada's contracts include a uniform promise—if a flight is cancelled, consumers who paid money in exchange for a ticket on said flight are refunded their purchase price.

2. Nevertheless, after recently cancelling numerous flights due to the global COVID-19 pandemic, Air Canada declined to abide by its contractual obligations, thereby breaching its contract with numerous customers, including Mr. Levu.

3. On December 31, 2019, authorities in China confirmed the existence of an unknown respiratory virus. Eventually, the virus was identified as a coronavirus, referred to as COVID-19. Cases of COVID-19 were confirmed within the United States around January 20, 2020.

4. As a result, consumer demand for travel decreased, both within and outside the United States. Restrictions of various timeframes and scope were implemented by federal and local governments, including discouraging non-essential travel.

5. Because of declining consumer demand, Air Canada cancelled numerous flights in the United States. Such cancellations entitle customers, like Mr. Levu, to a refund of their money. In breach of its contracts and in violation of the law, Air Canada nevertheless refuses to provide such refunds.

**PARTIES**

6. Mr. Levu is a citizen of the State of Florida and resides in Orlando, Orange County, Florida.

7. Air Canada is a multinational corporation based in Toronto, Canada, and conducts substantial and extensive business throughout the world and the United States, including in the State of Florida.

**JURISDICTION AND VENUE**

8. This court has personal jurisdiction over Defendant because Defendant has sufficient and numerous contacts within the State of Florida and within this district and has otherwise availed itself of the laws of this state.

9. This court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d), because the amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because putative class members are citizens of a different state than Defendant. Additionally, no relevant exception applies to remove subject matter jurisdiction

10. Venue is proper in this Court because pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

## AIR CANADA'S RESPONSE TO COVID-19

11. Like most airlines, Air Canada's decision-making concerning modifications to flight schedule – or outright cancellation of lights – is determined by what is known in the industry as the "load factor." Generally, Air Canada's load factor is over 80%; in 2019, for example, it was 83.4%. "Load factor" is the percentage of seats for which air travel has been booked on a particular flight (or a group of flights, such as all flights between two destinations). Under all circumstances – whether a pandemic such as COVID-19 or normal fluctuations in consumer demand – if the "load factor" declines to a certain threshold, Air Canada will adjust its flight schedule as necessary to reach its desired load factor, including, if necessary, by cancelling flights.

12. The current pandemic is no different – Air Canada, while it "continues to monitor demand," according to its public statement, has significantly reduced and modified its flights through, as of today's date, May 31, 2020. This has included cancellation of numerous scheduled flights.

13. Initially, such cancellations were determined on essentially a case-by-case basis. By March 18, 2020, however, Air Canada announced that it was beginning to implement a broader "gradual suspension" – meaning cancellation of all flights in certain locations or schedules – through March 31, at which point "the majority" of travel would be suspended or cancelled (essentially excepting certain specific flight schedules, mostly within Canada). These cancellations include suspensions of travel entirely at numerous airports, or cancellation of specific flight

schedules (i.e., Houston to Ottawa). Many such suspensions (and accompanying cancellations) began on or around March 20, 2020, through May 1, 2020.

14. Overall, Air Canada has cancelled over 25% of its flights, meaning consumers, like Mr. Levu, who paid money in exchange for travel on said flights will not receive the benefit of their bargain.

15. Given such outright cancellations in the midst of a global pandemic, customers, including Mr. Levu, are clearly entitled to a return of their money for which they are receiving nothing in return, which is precisely what Air Canada promised to do in the event it cancelled scheduled flights.

16. Nevertheless, Air Canada is declining to abide by its contractual obligations. Instead, Air Canada is attempting to force customers to accept a credit for a different flight, which can be used over the next 24 months. Alternatively, to receive a refund, customers are subject to a $200 penalty applicable only when the *customer* cancels the ticket (and inapplicable when Air Canada cancels a flight).

17. This breaches Air Canada's contractual promise, which is to fully refund – and not merely extend a credit – in the event Air Canada cancels a flight.

18. Moreover, it also fails to comport with guidelines provided by the Department of Transportation, which issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice"). Therein, the DOT asserts airlines should refund tickets if they cancel flights due to the novel coronavirus, which is consistent with Air Canada's express obligation:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers

operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be *refunded promptly* when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.*

The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. *Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.* Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

(emphasis added).

5

19. Thus, Air Canada's failure to provide prompt refunds for canceled flights violates not only its own contract, but also federal prescriptions.

20. Because of Air Canada's conduct, customers who attempt to secure a refund are faced with a penalty of approximately $200.00.

## GENERAL ALLEGATIONS

21. On or about January 28, 2020, Mr. Levu purchased a ticket from Air Canada for travel from Orlando, Florida, to Toronto, Canada, and, from there, to Tokyo, Japan, which was scheduled to depart on May 14, 2020.

22. On or about March 27, 2020, Air Canada sent an email to Plaintiff providing notice that the flight had been rescheduled, and that Plaintiff's flight from Orlando to Toronto was now scheduled to depart on May 15, 2020.

23. On or about April 6, 2020, however, Air Canada provided a new notice, informing Plaintiff that his flight had been cancelled.

24. However, rather than refunding Plaintiff his payment for the cancelled flight, Air Canada instead informed Plaintiff he could only use the funds to secure travel on a different flight during the next 24 months.

25. Notwithstanding that Plaintiff could not take the flight he booked and for which he fully paid, and notwithstanding that Defendant cannot offer comparable accommodations on another flight, Plaintiff was not given a refund, but was only offered a credit for use on a different flight.

26. Every Air Canada passenger air travel ticket incorporates and is governed by Air Canada's terms and conditions, which it drafted, and which is entitled "International Tariff General

Rules Applicable to Transportation of Passengers and Baggage." Exhibit A ("Terms and Conditions").

27. Cancellation of flights and refunds therefor are governed by Rule 100 of the Terms and Conditions, which apply to "unused ticket[s] or portion[s] thereof." Terms and Conditions at 103.

28. Rule 100 Sec. (D) sets forth the procedure applicable to "Involuntary Refunds," defined as refunds provided "due to reasons within Air Canada's control or required for safety purposes" where "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangement." *Id*. at 104.

29. In such circumstances, Air Canada promises that it "will refund the unused portion of the ticket." *Id*.

30. Moreover, the Terms and Conditions specifically incorporate the Air Passenger Protection Regulations, which require, in instances such as when safety concerns – including, for example, war or hostilities or severe weather or other situations analogous to COVID-19 – to attempt to accommodate the travel needs of the customers (i.e., find an alternative means of providing travel to the same destination reasonably within the same timeframe) or, if unable to do so, to refund the unused portion of the ticket.

31. The Terms and Conditions by its express terms is also interpreted to conform to applicable law of the county in which the flight is located, including, in this case, the aforementioned DOT requirements and prescriptions.

32. In other words, the Terms and Conditions, both expressly and through incorporation of the Regulations and governing law, promise a refund of the unused portion of the ticket, which, in the case of Plaintiff and the Class Members, is the entire ticket.

33. Here, Defendant did not offer accommodations to comport with Plaintiff's or the Class Members' travel schedules according to their travel needs. Rather, the flights were cancelled entirely with no alternatives, and, indeed, Air Canada has suspended travel indefinitely during the relevant time period. Thus, neither Plaintiff nor the Class Members have or will use any portion of the ticket. Pursuant to the terms of the Contract, then, Plaintiff is entitled to a refund of the fare for the entire trip.

## CLASS ALLEGATIONS

34. Pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), Plaintiff seeks certification of the following class (the "Class"):

> All persons in the United States who purchased tickets for travel on a Defendant's flight (operated by Air Canada, Air Canada Express and/or Air Canada Rouge) scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight was canceled by Air Canada, and who were not provided a refund.

35. Excluded from the Class are Defendant and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns, as well as any judicial officers presiding over this matter, members of their immediate family, and members of their judicial staff.

36. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

37. The Class meets the criteria for certification under Rule 23(a), (b)(2), and (b)(3).

38. **Numerosity:** members of the Class are so numerous and geographically dispersed that the joinder of all member is impractical. While the precise number of class members is unknown at this time, upon information and believe, the Class is comprised of at least tens of thousands individuals, all of whom are identifiable through Air Canada's records, and can

8

be notified of the pendency of this action by court-approved methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice. Thus, numerosity is established within the meaning Rule 23(a)(1).

39. **Commonality:** this action involves common questions of law and fact that are subject to common issues, and which do not vary from individual to individual, including, but not limited to: (a) whether members of the Class are entitled to a refund of the unused portion of their ticket fares, (b) whether members of the Class are governed by the uniform contractual language, namely the Terms and Conditions; and (c) whether members of the Class are entitled to compensatory damages. Thus, commonality is established within the meaning of Rule 23(a)(2).

40. **Typicality:** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subject to the same conduct alleged to be unlawful and damaged in the same way. Plaintiff's claim is based on the same conduct as that of the Class Members – that Defendant's cancellation of flights without giving refunds constitutes a breach of the uniform contract and entitled Plaintiff and the Class to damages suffered as a result. Plaintiff makes the same claim under the same facts and is subject to the same defenses, meritorious or not, within the meaning of Rule 23(a)(3).

41. **Adequacy:** Plaintiff is an adequate representative of the Class because he is committed to zealously litigating this matter on behalf of the Class and will protect the interests of the Class. Plaintiff possesses no interests in conflict with those of the Class. Additionally, the undersigned counsel, selected by Plaintiff, are competent and experienced in litigating class actions, including class actions in the realm of consumer protection. Plaintiff's counsel has specifically litigated numerous large class actions in this Court. Thus, adequacy is established within the meaning of Rule 23(a)(4).

42. **Predominance**: the previously-identified common issues of law and fact predominate over any individual issues, within the meaning of Rule 23(b)(3). The central and dispositive issue in this litigation is whether the uniform contractual language at issue requires Defendant to provide a refund of the unused ticket purchase, or instead permits Defendant only to provide a credit in lieu thereof. Resolution of that question will necessarily resolve the central element of every claim in a single stroke. Variances in damages exist only because of differences in purchase price, the calculation of which is a ministerial act based on Defendant's easily-accessible records, and, in any event, the *measure* of damages sought – the unused portion of the ticket – is also a common issue predominating over any potential individualized issues.

43. **Superiority:** a class action is superior to any other available means for the fair and efficient adjudication of this controversy within the meaning of Rule 23(b)(3). No unusual difficulties will be encountered in the management of this class action, which raises streamlined questions the resolution of which are almost entirely issues of law, namely contract interpretation. Moreover, the damages suffered by Plaintiff and the Class members are relatively small – generally a few hundred dollars – particularly in comparison to the burden and expense required to individually litigate claims against a large, multinational corporation. Not only it is impracticable for individual class members to obtain individual redress, the court system could not provide a realistic avenue even if class members were inclined to do so, because the burden of thousands of individual lawsuits asserting precisely the same claim would overwhelm the court's limited resources. Furthermore, individual litigation by separate litigants in front of different judicial officers would potentially cause inconsistent and even contradictory orders and judgments. Class treatment of this action, on the other hand, allows for consistent adjudication and supervision by a single court.

44. **Rule 23(b)(2):** Class certification is also appropriate under Rule 23(b)(2) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, namely by refusing to provide a refund of the unused portion of tickets purchased for flights Defendant cancelled, thereby making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendant continues to refuse to offer refund of the ticket as an option to consumers, including Plaintiff, thus making declaratory relief a live issue and appropriate to the Class as a whole. Treatment through Rule 23(b)(2) provides the opportunity for expeditious determination of the proper interpretation of a contract, thereby clarifying the rights and obligations of Defendant and Class Members and providing Class Members with the full array of rights under the contract.

## CLAIM FOR BREACH OF CONTRACT

45. Plaintiff realleges and reincorporates the previous allegations as if fully set forth herein.

46. This claim for breach of contract damages is based on Defendant's breaches of its Contract, which applies uniformly to Plaintiff and every member of the Class.

47. Plaintiff and all putative class members respectively entered into a Contract whereby Plaintiff and all respective putative members of Class paid a specific sum of money to Defendant in exchange for the provision of air travel.

48. Plaintiff and all putative class members performed under the Contract complied with all conditions precedent under the Contract, including by tendering the agreed sums, such that performance by Defendant was due.

49. Plaintiff and the putative Class Members, through no fault of their own, are not and will not obtain the benefit of their bargain – namely the bargained-for air travel – because Defendant cancelled the air travel for which they contracted.

50. Because Defendant cancelled the air travel, thereby depriving Plaintiff and putative Class Members of the benefit of their bargain, the governing contractual terms obligate Defendant to provide a refund for the unused portion of their ticket fares. By failing to provide the required refunds, Air Canada has breached its Contract with Plaintiff and every member of the Class.

51. As a result of said breach, Plaintiff and the putative Class Members are entitled to compensatory damages in the amount of the unused portion of their respective ticket fares, along with pre- and postjudgment interest, costs, fees, declaratory relief, and all other forms of relief this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class Members, respectfully requests that the Court enter judgment in their favor, and further requests this Court:

- Enter an Order at the earliest possible time certifying this action for class treatment and determining that this matter may proceed as a class action under Rule 23;

- Appoint Plaintiff as Class Representative and the undersigned as Class Counsel;

- Enter a declaration of the rights and obligations arising under the uniform Contract;

- Order Defendant to provide Plaintiff and each Class member their actual compensatory damages according to proof, or to order specific performance of the refund provisions of the Contract;

- Award reasonable attorneys' fees and costs of suit;

- Award prejudgment and postjudgment interest; and

- Award any further and other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable.

Dated: April 23, 2020

Respectfully submitted,

*/s/ Jake Phillips*
Jacob L. Phillips
Florida Bar No.: 120130
Edmund A. Normand
Florida Bar.: 865590
**NORMAND PLLC**
Post Office Box 1400036
Orlando, FL 32814-0036
T: (407) 603-6031
F: (888) 974-2175
ed@normandpllc.com
jacob.phillips@normandpllc.com
service@normandpllc.com